UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
UNITED STATES OF AMERICA      :
     :     **MEMORANDUM**
v.      :     **OPINION AND ORDER**
     :
JOHN MCGUIGAN,      :     18 CR 585-1 (VB)
              Defendant.      :
--------------------------------------------------------------x

Briccetti, J.:

       Now pending is defendant John McGuigan's motion pursuant to 18 U.S.C.

§ 3582(c)(1)(A)(i) to reduce his term of imprisonment to time served in light of the current

COVID-19 pandemic. (Doc. #105).

       For the following reasons, the motion is DENIED.

       The COVID-19 pandemic is an unprecedented worldwide catastrophe.  But it does not

warrant the early release of sentenced inmates in federal prisons convicted of serious and

dangerous offenses, like McGuigan, whose medical condition and risk of serious complications

if he were to contract the virus cannot, by any reasonable definition, be deemed "extraordinary

and compelling."  See 18 U.S.C. § 3582(c)(1)(A)(i).

       First, McGuigan's offense was exceptionally serious.  On February 19, 2019, he pleaded

guilty to participating in a conspiracy to sell 100 grams or more of heroin.  Specifically, over the

course of a two-year period beginning in 2016, McGuigan played a central role in a sophisticated

scheme to traffic and distribute heroin in and around Middletown, New York.  He purchased

wholesale quantities of heroin for redistribution, and in addition to selling heroin directly to his

own customers, McGuigan supplied large quantities of heroin on consignment to other drug

dealers who, in turn, distributed the heroin to their own customers and paid McGuigan out of the

proceeds from those sales.  McGuigan operated this drug trafficking operation out of his home,

where he and his codefendant underlings frequently gathered to package and prepare heroin for distribution.  In a plea agreement, McGuigan stipulated to distributing between 400 and 700 grams of heroin; possessing a firearm in connection with his drug trafficking activities; and managing a criminal enterprise that involved five or more participants.  McGuigan has several prior convictions, and committed the instant offense while on probation.

On June 4, 2019, after careful consideration of all the 18 U.S.C. § 3553(a) factors, including the nature and circumstances of the offense and the history and characteristics of the defendant, the Court sentenced McGuigan to eighty-four months' imprisonment, to be followed by four years of supervised release.  The Court did so despite an applicable Sentencing Guidelines range of 110 to 137 months' imprisonment and the Probation Department's recommendation of a 110-month sentence.  The Court determined that the sentence imposed was sufficient but not greater than necessary to reflect the serious nature of McGuigan's crimes, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes of the defendant, and avoid an unwarranted sentencing disparity from sentences imposed on other defendants in this case, none of whom held a supervisory role in McGuigan's drug trafficking operation.

To date, McGuigan has served about twenty-four months of his sentence, or roughly thirty percent of the sentence imposed.

Second, McGuigan has not demonstrated "extraordinary and compelling reasons" to warrant the extraordinary relief being sought—namely, early termination of a lawfully imposed prison sentence—taking into account critical data such as his medical history, the Bureau of Prison's ("BOP's") success at mitigating the spread of COVID-19 at his facility (Federal Correctional Institution ("FCI") Danbury), the seriousness of his criminal conduct, and the need

for the sentence imposed to promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public.  McGuigan is thirty years old.  He is not elderly or infirm.  He states he has suffered from asthma ever since he was a child, and that the BOP has ignored for two months his request for an inhaler.  He further states that at some unspecified time, he contracted COVID-19, and that the virus has caused him difficulty breathing, headaches, and loss of his senses of taste and smell.  Finally, he states that BOP has failed to provide him adequate medical treatment for back, neck, and shoulder pain stemming from a motor vehicle accident in 2018, prior to his arrest and incarceration.

But McGuigan's medical records reflect that, contrary to his assertions, McGuigan (i) does not have a history of asthma or any other condition that heightens his risk of contracting COVID-19 or developing complications from the virus, (ii) has not tested positive for the virus, and (iii) has not shown any symptoms indicative of having contracted the virus.  Indeed, McGuigan's medical records indicate that medical staff at FCI Danbury tested McGuigan for COVID-19 on May 27, 2020, and that, at the time, McGuigan was "asymptomatic."  (Ex. A at 5).[1]  On June 2, 2020, McGuigan's COVID-19 test result came back negative.  (Id. at 48).

A few days later, during a medical assessment on June 8, 2020, McGuigan told BOP medical staff, for the first time, that he suffered from asthma since childhood, and requested an inhaler.  (Ex. A at 3).  During the evaluation, however, McGuigan did not report a "clear pattern [of] when he becomes short of breath," and "appeared to be in no respiratory distress."  (Id.).  And apart from McGuigan's June 8 statements respecting his alleged asthma and request for an inhaler, his detailed medical file contains no other mention that he suffers from asthma, or has a

---

[1]     Citations to "Ex. A at __" refer to McGuigan's BOP medical file, which the government has provided under seal to the Court.

history of asthma or other respiratory illness, or requires a respiratory inhaler.  Indeed, prior to June 8, 2020, McGuigan consistently denied suffering from any respiratory ailments.  (Id. at 44 (July 19, 2019, health history screening); id. at 80 (July 2, 2019, health history screening); id. at 74 (June 15, 2019, health history screening).

With respect to McGuigan's chronic neck, back, and shoulder pain, McGuigan likewise fails to demonstrate how these conditions increase his risk of contracting COVID-19 or developing complications from same.  Despite his assertions that FCI Danbury has failed to care for these conditions, McGuigan's medical records indicate BOP medical staff has monitored these conditions, conducted X-rays to determine the source of his pain, managed and continue to manage his pain with medication, and has authorized the use of a lower bunk to mitigate McGuigan's pain.  McGuigan's medical file further indicates his "periodic discomfort" (Ex. A at 9), is a "chronic issue with no new exacerbations," and that he "will be scheduled for a follow up during a safer time" due to the facility's robust pandemic protocol and attempts to "limit[] contact to avoid possible spread of infection."  (Id. at 8).

Thus, there is no credible indication in McGuigan's medical file that his current medical condition—chronic back, neck, and shoulder pain—significantly increases his risk of contracting COVID-19 or developing serious complications if he does.  Further, McGuigan "has not shown he has a terminal illness or a serious physical or medical condition that has substantially diminished his ability to provide self-care within the environment of a correctional facility." See United States v. Gotti, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020).

Of course McGuigan is at risk for contracting the virus at FCI Danbury.  However, the Court is persuaded by the government's submission that FCI Danbury has taken substantial measures to respond to the COVID-19 threat, which have in fact mitigated its spread, and that it

4

has the means to competently care for its inmate population.  For example, FCI Danbury has

limited inmate movement within the facility; suspended staff travel and certain training;

restricted contractor access to the facility to only those performing essential services; and

performed enhanced screening for all new inmates coming into the facility, including a

mandatory quarantine of new inmates before they are released to assigned housing units.  (See

Doc. #115 ("Gov't Mem.") at 14–15).  And although FCI Danbury has had a number of positive

COVID-19 cases among its inmate population, current BOP statistics indicate that there are

currently only three confirmed active COVID-19 cases at the facility, among all inmates and

staff.[2]  Moreover, and importantly, FCI Danbury's handling of McGuigan's medical care and the

care of inmates at the facility who have tested positive for COVID-19[3] is demonstrative of FCI

Danbury's ability to provide adequate care to McGuigan, even if he were to contract the virus.

Finally, as required by Section 3582(c)(1)(A), the Court has considered "the factors set

forth in section 3553(a) to the extent that they are applicable."  The exceptionally serious nature

of the offenses, as well as McGuigan's criminal history, warranted an eighty-four month prison

sentence at the time sentence was imposed; those same factors counsel strongly against cutting

that sentence by seventy percent, especially in light of the downward variance already imposed

at sentencing.  Moreover, the sentence was designed to promote respect for the law and provide

just punishment for the offense.  To dramatically reduce the sentence in light of the current

public health crisis would neither be just nor promote respect for the law; if anything, it would

---

[2]     See COVID-19 Cases, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited August 13, 2020) (indicating one inmate and two staff confirmed active cases).

[3]     The government reports that "all but one of the 90 inmates at FCI Danbury who previously tested positive for the coronavirus have since recovered."  (Gov't Mem. at 15).

promote disrespect for the law.  And shortening McGuigan's sentence would also undermine two other critical sentencing objectives in this case:  the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant.  These sentencing factors not only supported the sentence at the time it was imposed, they also weigh strongly against McGuigan's early release.

Accordingly, defendant John McGuigan's motion for a reduction of his term of imprisonment is DENIED.

Chambers will mail a copy of this Memorandum Opinion and Order to defendant at the following address:

John McGuigan
Reg. No. 86061-054
FCI Danbury
Federal Correctional Institution
Route 37
Danbury, CT 06811

Dated: August 17, 2020
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

6